UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| DUJUAN GREEN, ) | Civil Action No.: 4:13-cv-1019-MGL-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| CAPT. WILLIAMS, SGT. ARROWOOD, ) | |
| SGT. BROWNING, SGT. SARATT, and ) | |
| OFC. POPELLA, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**I.    INTRODUCTION**

Plaintiff, who is proceeding pro se, brings this action alleging violation of his constitutional rights pursuant to 42 U.S.C. § 1983. Presently before the Court is Defendants' Motion for Summary Judgment (Document # 47). Because he is proceeding pro se, Plaintiff was warned pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Motion could result in the dismissal of his claims. Plaintiff timely filed a Response (Document # 53). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. This Report and Recommendation is entered for review by the District Judge.

**II.    FACTS**

In his complaint, declared to be true under penalty of perjury, Plaintiff asserts that he was on Crisis Intervention status, otherwise known as suicide watch, on August 4, 2014. Captain Williams ordered that Plaintiff's blanket be taken away, which, Plaintiff argues, was in retaliation for a previous lawsuit filed by Plaintiff against Williams. All of the Defendants approached Plaintiff's

cell and Captain Williams asked Plaintiff to give him his suicide blanket.[1]  Plaintiff asked why they wanted to take his blanket.  Defendants opened his cell door and Sergeant Browning began spraying gas in his cell.  Plaintiff stuck his feet out of the cell to allow some fresh air into the cell.  Sergeant Browning continued to spray gas in his cell and "all over" Plaintiff.  Sergeant Arrowood and Officer Popella repeatedly slammed a shield on Plaintiff's feet.  Defendants used over 240 grams of gas, which caused his eye to swell almost completely shut and caused a rash all over his body.  His feet were also swollen as a result of the incident.  Pl. Complaint p. 3.

Defendants aver that their attention was drawn to Plaintiff, who was in SMU and on Crisis Intervention[2], when officers observed that Plaintiff had spread feces on the observation window of his cell, which creates a safety hazard to the officers exposed to the feces.  The officers notified Captain Williams.  Because of Plaintiff's actions and the hazard it caused, Captain Williams became concerned about Plaintiff's mental state and ordered that Plaintiff's suicide blanket be removed from Plaintiff's cell.[3]  After being informed that Plaintiff refused a direct order to give officers his suicide blanket, Captain Williams ordered that an extraction team be assembled and proceeded to SMU.  The extraction team gave Plaintiff an order to come to the cell door to be placed in handcuffs.  Plaintiff refused to comply and Sergeant Browning administered a burst of chemical munitions in an attempt to gain compliance.[4]  Plaintiff still refused to comply and laid on the floor using the

---

[1]Plaintiff represents in his response to the motion for summary judgment that a suicide blanket is specially made with a thick cloth to prevent it from being torn.

[2]Inmates are placed on Crisis Intervention when they are deemed to be a potential threat to themselves and have attempted to or threatened to harm themselves.  Williams Aff. ¶ 4.

[3]Because he was on Crisis Intervention, all of Plaintiff's personal property was removed and he was allowed only a suicide blanket.  Williams Aff. ¶ 5.

[4]Captain Williams avers that, when possible, chemical munitions are used prior to using physical force because there is less risk of harm to both the inmate and officers.  Williams Aff. ¶ 6.

blanket to cover himself. He also stuck his feet out of the holes in the bar door, which are used to place leg irons on inmates. With his legs in such a position, Defendants were concerned they would injure Plaintiff by opening the bar door. Plaintiff was ordered several times to move his feet, but he refused to do so. Additional chemical munitions were used to gain Plaintiff's compliance. Defendants attempted to push Plaintiff's feet back into the cell, but Plaintiff resisted. Chemical munitions were again used and, at that time, Plaintiff complied and officers were able to place handcuffs on Plaintiff. A retrieval chain[5] was also used so that Defendants could gain better control of Plaintiff. Williams Aff. ¶¶ 4-7; Saratt Aff. ¶¶ 4-5; Arrowood Aff. ¶¶ 4-6; Popella Aff. ¶¶ 4-6; Browning Aff. ¶¶ 4-6; DVD of Incident (Ex. to Def. Motion).

   Once Plaintiff was handcuffed, officers were able to enter Plaintiff's cell and remove the blanket. After officers removed the blanket and closed the cell door, they instructed Plaintiff to come to the door so they could remove the handcuffs. Plaintiff resisted, but the officers were able to use the retrieval chain to remove the handcuffs. Plaintiff was not allowed to go to the shower at that time because Plaintiff was in an agitated state, which could lead to a risk of harm to both Plaintiff and officers. However, Plaintiff had running water in his cell and, thus, could decontaminate from the chemical munitions in his cell. Plaintiff was checked by a nurse, who observed no injury or apparent distress and instructed Plaintiff to wash his eyes with water. The feces were not removed at that time. To clean the feces from the observation window, the bar door would need to be open and the individual cleaning the window would have to be inside the cell. Because of Plaintiff's agitated state, the officers did not feel it was the appropriate time to clean the window. It was cleaned later. Williams Aff. ¶ 8; Saratt Aff. ¶ 6; Arrowood ¶ 7; Popella Aff. ¶ 7; Browning

---

[5] A retrieval chain is a chain attached to a handcuff, which allows for greater control and ease in safely removing the handcuffs. Williams Aff. ¶ 7.

Aff. ¶ 7; DVD of Incident.

Plaintiff also asserts in his Complaint that the chemical munitions used by Defendants was inappropriate. He asserts that they used fogger, which "is only to be use[d] to control[] situations like riots." Captain Williams avers that Defendants used a MK-9 Fogger, which is routinely used in cell extractions. Officers also have access to MK-4 chemical munitions, but Captain Williams avers that this type of gas is often ineffective when an inmate is at the back of the cell because it has a limited range. Captain Williams avers that another type of chemical munitions, Ispra, is used during riot situations. Williams Aff. ¶ 9.

### III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary

judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## VI. DISCUSSION

### A. Claims Under Section 1983

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

### B.    Claims Against Defendants in Their Official Capacities

Defendants argue that Plaintiff's § 1983 claims against them for money damages in their official capacities are barred pursuant to Eleventh Amendment Immunity. They also argue that the action against them should be dismissed as a matter of law to the extent that they are sued in their official capacities because while acting in their official capacities as an employee of the SCDC they are not "persons" under 42 U.S.C. § 1983 and, therefore, not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 70.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity.  Id.  In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore,

against the state. State officials may only be sued in their individual capacities.

There is no dispute that Defendants were employees of the SCDC at the time of the allegations in the complaint. Thus, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

### C.     Excessive Force

Plaintiff complains that Defendants violated his right to be free from cruel and unusual punishment when they used excessive force on him for failing to obey an order and when they denied him any medical attention following the use of chemical munitions. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v. Gaddy, 559 U.S. 34, 39, 130 S.Ct. 1175, 1179, 175 L.Ed.2d 995 (2010). The Eighth Amendment analysis requires inquiry as to whether a prison official "acted with a sufficiently culpable state of mind and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams, 77 F3d at 761.

In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. Id. (internal quotation marks omitted). The objective component is not as demanding because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evidenced." Wilkins, 559 U.S. at 37 (internal quotation marks omitted).

In an excessive force claim, the state of mind is "wantonness in the infliction of pain." Whitley,

-7-

475 U.S. at 322. In Whitley, the Supreme Court identified four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted;"[6] and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Id. at 321.

First, the court must consider the need for the application of force. Plaintiff claims that Captain Williams ordered that his suicide blanket be taken away in retaliation for a separate lawsuit Plaintiff has filed against him. Plaintiff does not deny that he spread feces over the observation window of his door; however, he argues that this action did not create a safety hazard, nor were Defendants actually concerned for his mental health because they did not contact his mental health counselor once they discovered the feces. Captain Williams explains in his affidavit that this incident occurred in the evening and, thus, a mental health counselor was not present. Captain Williams determined that it was appropriate to take the suicide blanket and the mental health counselor could determine after seeing Plaintiff the following day whether the blanket could be returned. Williams Aff. ¶ 5.

Plaintiff also admits several times in his response that he failed to follow the direct orders given to him to turn over his blanket. Pl. Response pp. 2, 4, 5. The Seventh Circuit has recognized the importance of inmates following direct orders: " Orders given must be obeyed. Inmates cannot be

---

[6] While the Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins, 559 U.S. at 37. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, 559 U.S. at 37. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control. One can quickly reason what would happen in a maximum security prison without proper discipline." Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984). If an "inmate cannot be persuaded to obey the order, some means must be used to compel compliance." Id. Captain Williams avers that the use of chemical munitions is preferred over physical force because there is less risk of harm to both the inmate and officers. Williams Aff. ¶ 6. Here, Plaintiff repeatedly refused to comply with the orders given to him and, thus, Defendants had to resort to measures other than verbal commands to gain compliance. For these reasons, there existed a need for the application of force.[7]

The next factor to consider in determining whether Defendants' use of force was malicious or sadistic is the relationship between the need for force and the amount used. The record reveals that chemical munitions were used several times before Plaintiff complied with Defendants' orders. A total of 248 grams of chemical munitions were used during the incident. Report on the Use of Force (Ex. to Pl. Resp.). The "limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate." Williams, 77 F.3d at 763. Courts must evaluate the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use ... in the prison environment." Bailey v. Turner, 736 F.2d 963, 969 (4th Cir.1984). A review of the DVD-recording of the event reveals a lack of malicious intent on the part of Defendants. The DVD shows that Defendants used several, intermittent bursts of chemical munitions while Plaintiff actively refused to comply with their directives to remove his feet from the leg iron holes. Defendants can also be seen on the DVD using their feet and a shield to attempt to push Plaintiff's feet back into the cell. Once Plaintiff complied with this directive,

---

[7] While an issue of fact may exist as to why Captain Williams initially ordered that Plaintiff's blanket be removed, it is not material to Plaintiff's claim of excessive force.

Defendants ceased using the chemical munitions even though Plaintiff continued to refuse to follow orders to come to the cell door to be handcuffed. Defendants did not continue to use chemical munitions once Plaintiff was subdued. Although this court has found the use of lesser amounts of chemical munitions sufficient to create an issue of fact, see, e.g., Wright v. Mack, No. 5:12-cv-2232-TMC, 2013 WL 3946286 (D.S.C. July 31, 2013), there is no amount of chemical munitions, the use of which would automatically constitute excessive force. As stated above, courts must look to the totality of the circumstances to determine whether the use of chemical munitions rises to the level of a constitutional violation.

Courts must also consider a defendant's reasonable perception of any potential threat raised in the situation at hand. Here, Plaintiff was in SMU and on crisis intervention/suicide watch. After learning of the feces smeared by Plaintiff on the observation window, Captain Williams became concerned for Plaintiff's own well-being, including the possibility that Plaintiff may attempt to harm himself.

With respect to the injury sustained by Plaintiff, the DVD submitted by Defendants also includes footage of the nurse visiting Plaintiff at his cell door shortly after the use of chemical munitions. The nurse observed Plaintiff and instructed him to wash his eyes with water and noted that he was walking around his cell and did not appear to have trouble breathing. Medical personnel again saw Plaintiff two days after the incident when he complained of a swollen eye. These facts are insufficient to create an issue of fact as to whether Defendants used excessive force when they used chemical munitions to gain Plaintiff's compliance with their orders. See footnote 6, supra.

In sum, considering the need for the use of force, the amount of force used in relation to that need, the perceived threat to other inmates and officers, and the extent of Plaintiff's injury, Plaintiff fails to create an issue of fact as to whether he was subjected to cruel and unusual punishment and summary judgment is appropriate.

**D.     Qualified Immunity**

Defendants argue that, even if their use of force did violate Plaintiff's constitutional rights, they are entitled to qualified immunity. "The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing." Akers v. Caperton, 998 F.2d 220, 225–26 (4th Cir.1993). The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. Id. at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." Parrish v. Cleveland, 372 F.3d 294, 301 (4th Cir.2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." Id. (citations and internal quotation omitted).

As discussed above, Plaintiff fails to present sufficient evidence to show that Defendants

-12-

violated his constitutional right to be free from cruel and unusual punishment.  However, to the extent there was a constitutional violation, a reasonable person in Defendants' positions would not have known that their conduct violated Plaintiff's constitutional rights. Thus, Defendants are entitled to qualified immunity for Plaintiff's claims against them in their individual capacities.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 47) be granted and this case dismissed in its entirety.

                                          s/Thomas E. Rogers, III
                                          Thomas E. Rogers, III
                                          United States Magistrate Judge

September 29, 2014
Florence, South Carolina

**The parties are directed to the important notice on the following page.**